J-A30034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TINA TEDESCO | |
| Appellant | No. 1053 EDA 2016 |

Appeal from the Judgment of Sentence entered October 26, 2015
In the Court of Common Pleas of Monroe County
Criminal Division at No: CP-45-CR-0002229-2013

BEFORE:  BOWES, OLSON, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                **FILED MARCH 20, 2017**

Appellant, Tina Tedesco, appeals from the judgment of sentence imposed on October 26, 2015 in the Court of Common Pleas of Monroe County following her convictions of third degree murder, neglect of care-dependent person, theft by unlawful taking, theft by failing to make required disposition of funds received, and tampering with/fabricating physical evidence.[1]  With the exception of tampering with physical evidence, Appellant also was convicted of conspiracy to commit each of the enumerated crimes.[2]  The trial court sentenced Appellant to an aggregate

---

[1] 18 Pa.C.S.A. §§ 2502(c), 2713(a)(1), 3921(a), 3927(a), and 4910(1).

[2] 18 Pa.C.S.A. § 903.

term of incarceration of not less than 183 (15.25 years) months and not more than 366 months (30.5 years). Appellant filed post-sentence motions that were denied by order of March 3, 2016. This timely appeal followed.[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925. Following review, we affirm.

The trial court issued findings of fact in an opinion accompanying its order denying Appellant's omnibus pre-trial motion. Trial Court Pre-Trial Opinion ("Pre-Trial Opinion"), 6/20/14, at 1-7. The trial court also thoroughly summarized the evidence presented at trial in its opinion disposing of Appellant's post-sentence motion. Trial Court Post-Sentence Opinion ("Post-Sentence Opinion"), 3/3/16, at 1-11. We hereby adopt the findings of fact and summary of trial evidence as our own and incorporate them herein by reference.

Briefly, Appellant and her husband had a relationship with their victim, Barbara Rabins, for approximately twelve years preceding Ms. Rabins' August 18, 2011 death at the age of 70. Ms. Rabins was a mentally and physically disabled individual who was estranged from her out-of-state family and whose father established a trust fund for her before his death.

_____

[3] Appellant was tried, convicted, and sentenced with her husband, John Tedesco. Although their cases were joined for trial, they were convicted of the same crimes, and they received identical sentences, their appeals have not been consolidated. Mr. Tedesco's appeal is docketed at No. 787 EDA 2016.

Appellant and her husband received $2,000 per month from the trust for rent and incidental expenses as well as money from the trust to pay for their utility bills. In addition, Appellant, as payee, received Ms. Rabins' $1,300 monthly social security checks. Also, Appellant and her husband were designated beneficiaries of $100,000 life insurance policy insuring Ms. Rabins and identifying her as their aunt.

In 2010, Ms. Rabins suffered a stroke and was admitted to a rehabilitation facility. The Tedescos insisted that she be released to their care shortly thereafter and Ms. Rabins was discharged against medical advice. At the time of her discharge on July 14, 2010, Ms. Rabins weighed 219 pounds. At the time of her August 2011 death, which was caused by "hypernatremic dehydration with aspiration of food bolus," *i.e.*, dehydration with high sodium levels and choking (on a piece of cheese), Ms. Rabins weighed 116 pounds. An autopsy revealed that, at the time of her death, Ms. Rabins was wearing an adult disposable diaper that was wet with urine, feces and blood. She suffered from pressure ulcers on her chest, thighs, legs, feet, right elbow and forearm, back, lower back, buttocks and hand. Photographs taken at the autopsy showed that her arms and hands were dirty and covered in feces, with feces under her overgrown fingernails that were an inch to an inch and a half long on one hand. Ultimately, the doctor who conducted the autopsy announced that the manner of death was neglect of a care dependent person, fitting the medical definition of

homicide. As a result, the Pennsylvania State Police initiated an investigation into her death, including a search of the Tedescos' home. Appellant and her husband both voluntarily gave statements to the police.

The Tedescos contended that they cared for Ms. Rabins in their home but evidence suggested that she was actually living in an apartment with a roommate, Tom Miller, who was hospitalized in a V.A. hospital beginning in March of 2011 and beyond Ms. Rabins' death. A search of the apartment revealed an apartment in a filthy condition that contained wheelchairs, walkers, and a blanket and couch that were soiled.

The Tedescos were arrested in July 2013 and charged with the crimes of which they were convicted. In this appeal from the judgment of sentence entered by the trial court, Appellant asks us to consider eleven issues, all but one of which were preserved in her Rule 1925(b) statement.

Appellant's issues, which we have reordered for ease of discussion, are as follows:

I. Whether the trial court erred in admitting the grand jury testimony of [John Tedesco] against [Appellant] at trial in violation of **Bruton**?[4]

II. Whether the trial court commited (*sic*) error by failing to dismiss due to prosecutorial delay?

III. Whether the trial court committed error by denying [Appellant's] motion to sever her trial from her husband John Tedesco's trial?

---

[4] **Bruton v. United States**, 391 U.S. 123 (1968).

IV. Whether the trial court erred in failing to suppress the statements made by [Appellant] to the police where the interrogation lasted several hours and [Appellant] was never advised of her Miranda rights?

V. Whether the trial court erred in allowing Nurse Blanchard-Doran to testify as an expert, over the objection of counsel for [Appellant], where the Commonwealth failed to provide notice to the defense of this intended use of the witness, no report was prepared and her testimony was not able to be viewed by defense expert (*sic*)?

VI. Whether the trial court erred in allowing the witness Jillian Viscardi to testify without provideing (*sic*) any notice to the defense that she was a witness or that the attorney for the Commonwealth himself interviewed her so no written statement existed?

VII. Whether the trial court erred in allowing the cumulative testimony of Corporal [Gross] regarding the condition of the victim's body?

VIII. Whether the trial court erred in allowing the admission of documents and items into evidence over the objection of counsel for the defense, that had not been provided in discovery in violation of Pa.R.Cr.P. 573?

IX. Whether the trial court erred in failing to grant [Appellant's] motion for change of venue due to the overwelming (*sic*) amount of negative pre-trial publicity?

X. Whether the trial court erred and abused its discretion in sentencing [Appellant] in the top end of the standard range of the sentencing guidelines, failing to consider the numerous mititgating (*sic*) factors cited by the defense at the sentencing hearing?

XI. Whether the trial court erred in failing to grant [Appellant's] motion for judgment of acquittal on the tampering with evidence charge as there was insufficient evidence to convict presented at trial to convict (*sic*)?

Appellant's Brief at 8-10.

In her first issue, Appellant asks us to find trial court error for admitting the grand jury testimony of her husband and co-defendant, John Tedesco, in violation of *Bruton*. However, Appellant did not preserve this issue in her Rule 1925(b) statement. "Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived." *Commonwealth v. Hill*, 16 A.3d 484, 494 (Pa. 2011) (quoting *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998)).[5]

In her second issue, Appellant argues that the trial court erred by not dismissing the case due to prosecutorial delay. Again, Ms. Rabins died in August 2011. Appellant and her husband were charged with the murder of Ms. Rabins in July 2013.

In *Commonwealth v. Wright*, 865 A.2d 894, 901 (Pa. Super. 2004), this Court determined that:

> [T]he standards set out by the Supreme Court in *Commonwealth v. Snyder*, 552 Pa. 44, 713 A.2d 596 (1998), and the subsequent application of those standards in the *en banc* decision of this Court in *Commonwealth v. Snyder*, 761 A.2d 584 (Pa. Super. 2000) (*en banc*), *appeal denied,* 572 Pa. 703, 813 A.2d 841 (2002), are the touchstones upon which we must analyze the claim of appellant.

---

[5] Even if not waived, Appellant would not prevail on her *Bruton* claim. As the trial court explained in addressing the issue, which was raised in Appellant's post-sentence motion, a reference to Appellant in the testimony was appropriately changed to "the other person" on one occasion, avoiding any *Bruton* violation. Trial Court Opinion, 3/3/16, at 25. A later reference to Appellant was not redacted but no objection was lodged and her husband's response did not implicate Appellant but rather implicated himself as the one who cared for Ms. Rabins.

*Id.* at 901.  We explained:

> The Supreme Court in **Snyder** held that pre-arrest delay constitutes a due process violation where there has occurred "actual prejudice to the defendant" and there existed "no proper reasons for postponing the defendant's arrest." **Commonwealth v. Snyder, supra**, 552 Pa. at 62, 713 A.2d at 605.  This Court, thereafter, stated that "even in the face of prejudice, delay is excusable if it is *a derivation of reasonable investigation.*" **Commonwealth v. Snyder, supra**, 761 A.2d at 587 (emphasis supplied), *citing* **Commonwealth v. Sneed**, 514 Pa. 597, 526 A.2d 749 (1987).  Thus, it is clear that any inquiry into pre-arrest delay must be directed to both the existence of prejudice to the defendant and to the cause of the delay.

*Id.* (footnote omitted).  Further,

> Taking our direction from the procedure described in **Snyder***,* we deem it appropriate that in extended pre-arrest delay cases there should be a shifting burden, with the initial burden upon the accused to establish that the pre-arrest delay caused actual prejudice, and the subsequent burden upon the Commonwealth to provide a reasonable basis for the extended delay in prosecuting the crime.

*Id.* at 902.

As the trial court noted, Appellant does not suggest that the statute of limitations had expired for any of the crimes with which she was charged.  Pre-Trial Opinion, 6/20/14, at 8.  Instead, Appellant argues that she suffered prejudice as a result of the pre-arrest delay because two potential witnesses, Tom Miller and Ronnie Mendel, were not available to testify.  However, as the trial court recognized, Mr. Miller was already in the V.A. Hospital at the time of Ms. Rabins' death and could not recall his contacts with Ms. Rabins or Mr. Tedesco at that time.  *Id.* at 12.  Further, Ms. Mendel, who was Ms.

Rabins' sister, was estranged from her sister and, as the trial court noted, it was not clear how her testimony could have benefitted the defense. *Id.*

As the Commonwealth observes, Ms. Mendel passed away before trial but her husband was available to testify and did testify concerning Ms. Rabins' estrangement from her family. Commonwealth Brief at 21. "Therefore, even if the absence of Ronnie [Mendel] could conceivably be considered as prejudicial to the defense, the presence, availability and testimony of [her husband] adequately covered that issue as demonstrated by the transcript." *Id.*

We agree with the trial court's conclusion that Appellant did not suffer any prejudice as a result of any pre-arrest delay.[6] Appellant is not entitled to relief on this issue.

In her third issue, Appellant contends the trial court erred by denying her request to sever her trial from that of her husband. Appellant acknowledges that "[t]he decision to grant or deny a severance rests in the sound discretion of the trial court." Appellant's Brief at 23. However, she argues that separate trials should have been granted in accordance with

_____

[6] Even if Appellant successfully carried her burden to show prejudice, the Commonwealth provided a reasonable basis for the delay. As the trial court explained, "[T]he Commonwealth had a reasonable basis in continuing to investigate the circumstances of Barbara Rabins' death and that part of the delay after the gathering of Barbara Rabins' medical records was caused by the use of the grand jury to pursue the investigation." Pre-Trial Opinion, 6/20/14, at 12.

Pa.R.Crim.P. 583, which provides that the court may order separate trials if it appears that any party may be prejudiced by the defendants being tried together. She suggests that prejudice existed here in light of the fact she and her co-defendant were also husband and wife. She argues that **Bruton** addresses the issue of one defendant's statements implicating a co-defendant. She also raises the issue of spousal immunity, contending that testimony of either co-defendant is subject to spousal immunity and is inadmissible against the other spouse.

We disagree. First, regarding **Bruton**, there were no statements by John Tedesco that implicated Appellant. **See** n. 5. As to spousal immunity, as the trial court recognized, 42 Pa.C.S.A. § 5913 provides for spousal immunity in a criminal proceeding but with certain exceptions, one of which is a criminal proceeding that includes a murder charge. 42 Pa.C.S.A. § 5913(4). Appellant has not demonstrated any prejudice resulting from the trial court's denial of her motion to sever, and spousal immunity does apply to murder trials. Moreover, as the Commonwealth notes, joint trials are appropriate when the defendants face conspiracy charges as they did here, and when the charges demonstrate a logical connection between the defendants and the crimes charged. Commonwealth Brief at 29 (citing **Commonwealth v. Paolello**, 665 A.2d 439 (Pa. 1995). Finding no abuse of discretion on the part of the trial court for denying the severance request, we conclude that Appellant's third issue fails for lack of merit.

In her fourth issue, Appellant asserts trial court error for denying her motion to suppress the statements she gave to police because the interrogation lasted several hours, she was in custody at the state police barracks, and she was not advised of her *Miranda* rights. The trial court rejected Appellant's characterization of the circumstances surrounding her statements and concluded *Miranda* rights were not required.

Our standard of review of "the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. (Patrick Scott) Jones*, 121 A.3d 524, 526 (Pa. Super. 2015) (quoting *Commonwealth v. (Curtis) Jones*, 988 A.2d 649, 654 (Pa. 2010)). Where the suppression court's findings are supported by the record, we are bound by those findings and may reverse only if the court's legal conclusions are erroneous. *Id.*

Appellant was questioned three times. The first occasion was during the execution of the search warrant of the Tedescos' home. Corporal William Gross of the Pennsylvania State Police "escorted [Appellant and her daughter] to the kitchen area and [Appellant] and her daughter and [Corporal Gross] remained in the kitchen for the entire time the search warrant was being conducted." Pre-Trial Opinion, 6/20/14, at 16 (quoting notes of testimony of the suppression hearing). During the search, the Corporal explained to Appellant that the purpose of the search was to

- 10 -

investigate questions raised by the coroner about Ms. Rabins' death and he asked Appellant about her relationship with Ms. Rabins. *Id.*

The trial court determined that Appellant was not subjected to a custodial investigation necessitating administration of *Miranda* rights. "Specifically excluded from custodial interrogation (in the *Miranda* decision) was '[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process . . . .'" *Id.* (quoting *Miranda v. Arizona*, 384 U.S. 436, 477 (1966)). Because the Corporal's questions "appear to be the general fact-gathering questioning excluded from the *Miranda* holding[,] . . . there was no custodial interrogation in the house of the kind addressed in *Miranda*." *Id.* at 17.

In addition to the questioning in her kitchen, Appellant also was questioned twice at the police barracks. She and her husband voluntarily arrived at the barracks and signed in as visitors in response to a state police request that they come to answer questions. Each was interviewed by two state troopers in separate audiotaped sessions that, for Appellant, lasted approximately 90 minutes. During the session, she voiced on various occasions her understanding that she was not under arrest and was free to leave at any time. Although she was questioned in a closed room, the door was not locked and she was not restrained.

At the conclusion of the interview, Appellant went to the parking lot to wait for her husband. One of the troopers later came out to the parking lot

and asked her to return to the barracks to answer additional questions prompted by responses her husband gave during his interview. Appellant agreed and returned to the barracks for an additional interview that lasted approximately ten minutes. She again acknowledged her understanding that she was free to leave during the questioning.

The trial court, after reviewing the audiotapes of the two interviews, concluded that Appellant was subject to interrogation but it was not a custodial interrogation requiring the administration of *Miranda* warnings. Pre-Trial Opinion, 6/20/14, at 17-18. As the trial court recognized, "The test for determining whether a suspect is in custody is whether the suspect is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonable believes that his freedom of action or movement is restricted." *Id.* at 15 (quoting *Commonwealth v. Eichlinger*, 915 A.2d 1122, 1133-34 (Pa. 2007)). Also, "[a] person is considered to be in custody for purposes of *Miranda* when the officer's show of authority leads the person to believe that she was not free to decline the officer's request, or otherwise terminate the encounter." *Id.* (quoting *Commonwealth v. Page*, 965 A.2d 1212, 1218 (Pa. Super. 2009) (additional citation omitted)). We find the trial court's factual findings are supported by the record and that its legal conclusions are correct. Therefore, we shall not disturb the trial court's ruling denying Appellant's motion to suppress. Appellant's fourth issue fails.

Appellant's fifth through eighth issues allege trial court error relating to evidentiary issues. As such, our standard of review is abuse of discretion. ***Commonwealth v. Watson***, 945 A.2d 174, 176 (Pa. Super. 2008); ***Commonwealth v. G.D.M., Sr.***, 926 A.2d 984, 986 (Pa. Super 2007).

In her fifth issue, Appellant asserts trial court error for allowing Nurse Blanchard-Doran to testify as an expert witness because the Commonwealth failed to identify her as an expert witness, because no report was prepared, and because Appellant's expert was unable to view her testimony. As this Court recognized in ***Watson***, "Our standard of review in cases involving the admission of expert testimony is broad: 'Generally speaking, the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion." ***Watson***, 945 A.2d at 176 (quoting ***Commonwealth v. Brown***, 596 A.2d 840, 842 (Pa. Super. 1991) (additional citations omitted)). "An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice." ***Id.*** (citing ***Brown***, ***supra***).

Ms. Blanchard-Doran was the director of nursing at a facility where Appellant's victim was treated a year prior to her death. As mentioned above, Ms. Rabins left the facility against medical advice at the insistence of Appellant and her husband. The witness offered testimony concerning Ms. Rabins' stay at the facility, her condition, and her discharge against medical advice. When the witness offered testimony regarding the staging of

wounds, counsel for Appellant objected based on the lack of an expert report. The trial court permitted the prosecution to voir dire the witness and afforded defense counsel the opportunity to question the witness on her qualifications. The witness was then received as an expert in geriatric nursing.

As the trial court recognized, Pa.R.E. 702 (Testimony by Expert Witnesses) provides that a witness qualified by knowledge, skill, training or education may offer opinion testimony if the expert's knowledge is beyond that of the average layperson, the expert's specialized knowledge will aid the trier of fact to understand the evidence, and the expert's methodology is accepted in the relevant field. "Determining whether a witness may testify as an expert is a matter within the sound discretion of the trial court, whose decision will only be reversed for a clear abuse of discretion." Post-Sentence Opinion, 3/3/16, at 28 (quoting *Yacoub v. Lehigh Valley Medical Associates, P.C.*, 805 A.2d 579, 591 (Pa. Super. 2002)).

The trial court concluded that Ms. Blanchard-Doran had the requisite knowledge and skills to qualify as an expert under Pa.R.E. 702, noting:

> [Ms. Blanchard-Doran's] expertise in geriatric nursing qualified her to discuss pressure ulcers and wounds and her knowledge of them as they relate to geriatric patients. She is not required to be admitted as an expert in pressure ulcers and their staging specifically, as [Appellant] contends in her brief, to be qualified to discuss pressure ulcers in geriatric patients.

*Id.* at 29. Further, the Commonwealth did not violate any disclosure rules because the witness did not generate or introduce an expert report. *Id.*

- 14 -

Moreover, the defense was on notice of the prosecution's intention to offer an expert in pressure ulcers, even if the expectation was that a different witness would offer that testimony. Consequently, Appellant did not suffer any prejudice. Finding no abuse of discretion in the trial court's admission of Ms. Blanchard-Doran's expert testimony, we reject Appellant's fifth issue for lack of merit.

In her sixth issue, Appellant argues that the trial court erred by permitting Jillian Viscardi to testify without notice to the defense of the intent to call her as a witness. Appellant also complains that the prosecutor failed to disclose that he interviewed Ms. Viscardi in the course of his trial preparation and that, as a result, there was no written statement from the witness. Again, our standard of review is abuse of discretion.

When Ms. Viscardi was called to testify, counsel for Appellant asked for an offer of proof. The prosecutor explained that Ms. Viscardi was a high school friend of one of the Tedescos' daughters and would testify about the Tedescos' home and who was living there. Counsel then objected, suggesting that there must have been a statement taken from the witness. The prosecutor explained that Ms. Viscardi was identified by another of the daughter's friends in July 2015 from a photograph and was interviewed by the prosecutor himself in the course of his trial preparation. No statement was prepared. In response to the trial court's question concerning disclosure of the witness, the prosecutor explained that notice of the witness was not

required under the discovery rule. The trial court overruled the objection and permitted the testimony.

"The Rules of Criminal Procedure require only that the Commonwealth disclose the identity of eyewitnesses." ***Commonwealth v. Dietterick***, 631 A.2d 1347, 1351 (Pa. Super. 1993) (citation omitted), *appeal denied*, 645 A.2d 1312 (Pa. 1994). Ms. Viscardi was not an eyewitness to any criminal activity. "The Commonwealth is under no obligation to disclose the names of all its witnesses to the defendant." ***Id.*** (citations omitted). We find no abuse of discretion in the trial court's ruling.

In her seventh issue, Appellant asserts trial court error for permitting Corporal Gross to offer cumulative testimony regarding the condition of Ms. Rabins' body. Appellant contends that testimony concerning the condition of the body had already been offered by Dr. Land and Coroner Cindy Skrzypek, both of whom were present at the autopsy, as well as E.M.T. Mackenzie Joyce who testified as to the condition of the body when Ms. Rabins was pronounced dead. Appellant's Brief at 46-47. She argues that Corporal Gross's testimony was designed to elicit an emotional response from the jury and that the testimony had little probative value but significant prejudicial effect due to the Corporal's status as lead investigator in the case. ***Id.*** at 47-48.

The trial court explained its decision to allow the testimony, noting:

> The testimony of Corporal Gross about the state of Ms. Rabins['] body as he observed it at the autopsy was limited. He testified

that Ms. Rabins was dressed in a t-shirt and adult diaper with feces and urine in it. He did not testify further as to the state of her body. Although testimony regarding the state of Ms. Rabins' body was previously elicited, albeit in a much more graphic fashion, Corporal Gross' testimony regarding his observations at the autopsy was necessary to explain why he then initiated the investigation into Ms. Rabins['] death. The probative value of this very limited testimony was not outweighed by needlessly presenting cumulative evidence. Further [Appellant] has failed to show how Corporal Gross' limited testimony about the state of Ms. Rabins' body prejudiced her.

Post-Sentence Opinion, 3/3/16, at 40. We find no abuse of discretion on the part of the trial court for permitting the Corporal to provide limited testimony concerning his observations and the role his observations played in the initiation his investigation into Ms. Rabins' death. Appellant's seventh issue does not afford any basis for relief.

In her eighth issue, Appellant argues that the trial court erred in allowing the admission of documents and items into evidence that had not been provided in discovery. Appellant contends that several pieces of evidence were admitted over her counsel's objection despite the fact the Commonwealth had not disclosed the existence of the items. She claims her counsel could not have discovered the evidence through the exercise of due diligence. Appellant's Brief at 49. Appellant suggests that the amount of evidence not disclosed was not a coincidence but rather reflected that the Commonwealth attempted to ambush Appellant at trial. *Id.*

As the trial court recognized, Pa.R.Crim.P. 573 (Pretrial Discovery and Inspection) "enumerates items that must be disclosed upon the defendant's

request if they are material to the case, and provides that when applicable, the Commonwealth shall 'permit the defendant's attorney to inspect and copy or photograph such items.'" Post-Sentence Opinion, 3/3/16, at 30 (quoting Pa.R.Crim.P. 573(B)(1)). Items to be disclosed include "any tangible objects, including documents, photographs, fingerprints, or other tangible evidence." Pa.R.Crim.P. 573(B)(1)(f).

The joint trials of Appellant and her husband began on August 5, 2015, and concluded on August 14, 2015. During the August 7 proceedings, in response to objections that copies of the items comprising Exhibits 37 and 39 were not provided to the defense, the prosecution argued that Commonwealth property records disclosed to Appellant and her husband revealed that there were "miscellaneous documents" in the Commonwealth's possession. Counsel for John Tedesco argued there was an assumption the Commonwealth would copy and provide all such documents. The trial court determined the defense was aware of the documents and that those documents were available for inspection. Consequently, the trial court ruled that the Commonwealth could introduce Exhibits 37 and 39. Defense counsel could then review the documents to determine whether there were any evidentiary objections to the documents before the trial court would admit them. Defense counsel agreed to that proposed process.

At the conclusion of the day's proceedings, the trial court dismissed the jury and then discussed the challenged documents with counsel.

Counsel for John Tedesco advised the trial court that he did not have a problem with the documents other than the way they were listed for discovery. He indicated he had no evidentiary objections to any of the documents. Notes of Testimony, 8/7/15, at 237. Appellant's counsel then stated, "I agree." *Id.* The trial court admitted the documents. *Id.* at 238. Appellant's counsel did not lodge an objection. Therefore, the issue was not preserved for appeal. Even if the issue were preserved, we would find no abuse of discretion on the part of the trial court. As the trial court explained, "Rule 573 was not violated as the Commonwealth provided a complete list of the documents and items in their possession to the defense and offered them for inspection and copying." Post-Sentence Opinion, 3/3/16, at 34. Because the Commonwealth complied with Rule 573, the trial court did not abuse its discretion by admitting the evidence. We shall not disturb that ruling. *See Commonwealth v. Antidormi*, 84 A.3d 736, 749 (Pa. Super. 2014) (decision to admit evidence "shall be reversed only upon a showing that the trial court abused its discretion in determining whether evidence should be admitted") (citation omitted).

Appellant also complains that the trial court admitted documents from Ms. Rabins' trust administrator. However, as the trial court explained:

> The trust documents were documents that . . . the administrator of the trust[] had brought with her and given to the Commonwealth upon her arrival. They were not in the possession of the Commonwealth to give to the defense during pre-trial discovery and were turned over to the defense as soon as they were in the Commonwealth's possession. [Counsel] for

the Commonwealth stated that "[a]t the earliest opportunity I put both on counsel table prior to 8:30 this morning. As soon as I saw both counsel, I explained what it was and when I got it."

Post-Sentence Opinion, 3/3/16, at 34 (references to notes of testimony omitted). "The Commonwealth 'does not violate discovery rules where it does not provide defendant with evidence that it does not possess and of which it is unaware during pretrial discovery.'" *Id.* at 34-35 (quoting *Commonwealth v. Flood*, 627 A.2d 1193, 1200-01 (Pa. Super. 1993)).

We find no abuse of discretion on the part of the trial court with respect to the "miscellaneous documents" that were admitted. Likewise, we find no abuse of discretion for admitting documents provided by the trust administrator that were given to Appellant's counsel as soon as practicable. Appellant's eighth issue fails for lack of merit.

In her ninth issue, Appellant argues trial court error for denying her motion for a change of venue based on overwhelming negative pre-trial publicity. Our Supreme Court has explained:

> A trial court's decision on a defendant's motion for a change of trial venue based on the claimed existence of pretrial publicity prejudicial to his or her right to trial before an impartial jury is one vested within its sound discretion, and a trial court's decision to deny such a motion will not be overturned by this Court on appeal, unless the record evidences that the trial court has abused its discretion in making its ruling. *Commonwealth v. Weiss*, 565 Pa. 504, 514, 776 A.2d 958, 964 (2001). We have recognized that "the trial court is in the best position to assess the atmosphere of the community and to judge the necessity of any requested change." *Commonwealth v. Tharp*, 574 Pa. 202, 219, 830 A.2d 519, 529 (2003). In reviewing the trial court decision not to grant a change of venue the focus of our inquiry is to determine whether any juror formed a fixed opinion

- 20 -

of the defendant's guilt or innocence due to the pretrial publicity. *Commonwealth v. Drumheller*, 570 Pa. 117, 132, 808 A.2d 893, 902 (2002).

A change in venue is compelled whenever a trial court concludes a fair and impartial jury cannot be selected from the residents of the county where the crime occurred. *Weiss*, at 514–15, 776 A.2d at 964. As a general rule, for a defendant to be entitled to a change of venue because of pretrial publicity, he or she must show that the publicity caused actual prejudice by preventing the empanelling of an impartial jury. *Commonwealth v. Robinson*, 581 Pa. 154, 195, 864 A.2d 460, 484 (2004). The mere existence of pretrial publicity alone, however, does not constitute actual prejudice. Simply because prospective jurors may have heard about a case through media reports does not render them incapable of jury service, since, in today's "information age," where news of community events are disseminated virtually instantaneously by an ever multiplying array of delivery methods, it would be difficult to find 12 jurors who do not at least have some knowledge of the facts of an important and tragic incident like this one.

*Commonwealth v. Briggs*, 12 A.3d 291, 313 (Pa. 2011) (citations omitted).

Appellant's request for a change of venue was a component of her omnibus pre-trial motion argued on February 27, 2014. The trial court denied the motion, noting that media coverage documented by Appellant was, for the most part, coverage at the time of Appellant's arrest in July 2013 or her preliminary hearing in September 2013. Only one newspaper article—published on February 4, 2014 when the case was listed for trial—post-dated the preliminary hearing. "[A] change of venue will not be required where there has been sufficient time between publication and trial

for the prejudice to dissipate." Pre-Trial Opinion, 6/20/14, at 13 (citations omitted).

As the trial court explained, significant time had elapsed since the coverage took place. Although the trial court denied the request for a change of venue, the court indicated that Appellant would "be given the opportunity of individual voir dire at the time of jury selection. A determination can be made at that time whether it is possible to obtain an impartial jury. The motion will be denied, with the right to renew the motion if necessary during jury selection." Pre-Trial Opinion, 6/20/14, at 14.

Although the trial testimony was transcribed, there is no transcription of the notes of testimony from jury selection. Appellant does not suggest that she renewed her motion during jury selection. The Commonwealth indicates:

> The issue did not appear to come up in any meaningful way during jury selection. Certainly counsel for the Appellant would have possessed unlimited challenges for cause. If the jury pool was tainted by a mass of adverse or negative pretrial publicity one would expect there to be a record made of the same. However, there is no such record. There is no basis in the record to grant the relief requested by Appellant.

Commonwealth Brief at 54-55. We agree. Appellant's change of venue challenge fails.

In her tenth issue, Appellant contends the trial court erred and abused its discretion by sentencing her at the upper end of the standard range of the sentencing guidelines and failed to consider mitigating factors raised by

Appellant at the sentencing hearing. As such, Appellant presents a challenge to the discretionary aspects of sentencing and her brief must include a concise statement of the reasons relied upon for allowance of appeal in accordance with Pa.R.A.P. 2119(f). However, Appellant instead includes a statement of the scope and standard of review for a challenge to discretionary aspects of sentencing and refers to Pa.R.A.P. 3518, a rule rescinded in 1999. Appellant's Brief at 2. She proceeds to note that a sentence will not be reversed absent an abuse of discretion; that to constitute an abuse of discretion, a sentence must either exceed statutory limits or be manifestly excessive; that an appellant must raise a substantial question as to the appropriateness of the sentence; and that an appellant must demonstrate that the trial court's actions are inconsistent with the sentencing code or contrary to fundamental norms. *Id.* (citations omitted). However, Appellant's statement does not even suggest a question, let alone a substantial question. Therefore, Appellant has not complied with Rule 2119(f) and has not provided any basis for this Court to entertain a challenge to the discretionary aspects of her sentence. However, the Commonwealth did not object to Appellant's misstep. Therefore, we will not find the issue waived. *See Commonwealth v. Krum*, 533 A.2d 134, 138-39 (Pa. Super. 1987) (*en banc*) (an appellant's failure to comply with Rule 2119(f) may be waived if the Commonwealth fails to object to the defect).

Despite surviving waiver, Appellant's issue nevertheless fails. As this Court has recognized, "[T]he appellant must raise a substantial question as to the appropriateness of the sentence, which would permit us to accept the appeal as to this issue." *Commonwealth v. Kimbrough*, 872 A.2d 1244, 1262 (Pa. Super. 2005) (citation omitted). "Whether a substantial question has been raised that a sentence is inappropriate under the Sentencing Code must be evaluated on a case-by-case basis." *Id.* at 1263 (citation omitted). As this Court reiterated in *Kimbrough*, "A substantial question exists where the brief sets forth a colorable argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme." *Id.* (citation omitted).

Appellant contends her sentence was at the upper end of the standard range. However, "[w]hen the sentence is within the range prescribed by statute, a challenge to the maximum sentence imposed does not set forth a substantial question as to the appropriateness of the sentence under the guidelines." *Id.* (quoting *Commonwealth v. Brown*, 587 A.2d 4, 6 (Pa. Super. 1991)). Appellant has failed to present a substantial question for review.

With respect to Appellant's assertion that the trial court did not consider mitigating factors, we note that when the sentencing court has the benefit of a pre-sentence report, "it shall be presumed that that sentencing judge was aware of the relevant information regarding the defendant's

character and weighed those considerations along with the mitigating statutory factors." Post-Sentence Opinion, 3/3/16 at 22 (quoting **Commonwealth v. Bruner**, 564 A.2d 1277, 1289 (Pa. Super. 1989) (additional citation omitted)). Here, the trial court acknowledged receipt and review of the pre-sentence investigation during Appellant's sentencing. **Id.** (citing Notes of Testimony, Sentencing, 10/26/15, at 2). As the trial court explained:

> [T]he sentence for Murder in the Third Degree is within the guideline range and is therefore presumptively reasonable. In sentencing [Appellant], the [c]ourt review[ed] the PSI, letters from the victim's family, letters from [Appellant's] family and friends, and fashioned an aggregate sentence based on the evidence presented at trial and the jury's ultimate finding of guilt as to all charges. Because of the torture and abuse suffered by the Victim, who was mentally handicapped, at the hands of [Appellant and her husband] for their own gain, the consecutive sentences did not result in an excessive aggregate sentence.

**Id.** We agree. Finding no abuse of discretion on the part of the trial court, Appellant's challenge to her sentence fails.

In her eleventh and final issue, Appellant challenges the sufficiency of the evidence supporting her conviction for tampering with evidence. A challenge to sufficiency of evidence presents a question of law subject to plenary review. **Commonwealth v. Jones**, 904 A.2d 24 (Pa. Super. 2006) (citation omitted). As this Court noted in **Jones**:

> In reviewing a sufficiency challenge, we must determine whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict[-]winner, are sufficient to establish all elements of the offense beyond a reasonable doubt.

> To establish the offense of tampering with evidence, the Commonwealth must prove three interrelated elements: (1) the defendant knew that an official proceeding or investigation was pending; (2) the defendant altered, destroyed, concealed, or removed an item; and (3) the defendant did so with the intent to impair the verity or availability of the item to the proceeding or investigation. ***Commonwealth v. Morales***, 447 Pa. Super. 491, 669 A.2d 1003, 1005 (1996) (citing 18 Pa.C.S.A. § 4910(1)).

*Id.* at 26 (quotations, citations and footnote omitted).

The trial court concluded that, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, "the accumulation of circumstantial evidence in this case was strong enough for a jury to find that Ms. Rabins did not live or die at the Tedesco home and to make the inference that the Tedescos tampered with physical evidence believing an investigation was forthcoming." Post-Sentence Opinion, 3/3/16, at 14. The trial court proceeded to summarize the evidence supporting the tampering conviction. *Id.* at 14-16. That evidence included a lease reflecting that Ms. Rabins lived in an apartment with Tom Miller; that emergency personnel were called to the apartment to assist Ms. Rabins on several occasions; that the landlord indicated Ms. Rabins lived there; that mail postmarked to Ms. Rabins was found in the apartment; and that the coroner and emergency personnel responding to the Tedescos' home found the immaculate state of the Tedescos' living room incompatible with the Tedescos' statements that Ms. Rabins primarily lived in the living room and died there. In addition, witnesses testified that they never saw Ms. Rabins or any medical equipment

in the Tedesco home and never heard prior to the night Ms. Rabins died that an elderly woman was living there.

> The accumulation of this evidence was such that a jury could find beyond a reasonable doubt that Ms. Rabins was living at the apartment on Route 115 and not the Tedesco home, and that the Tedescos tampered with physical evidence regarding her residence and place of death, believing an investigation into her death was about to be begin.

*Id.* at 16. We agree. Viewing the evidence and reasonable inferences therefrom in a light most favorable to the Commonwealth, we find the evidence was sufficient to support Appellant's conviction of tampering with evidence. Appellant's sufficiency challenge fails.

Judgment of sentence affirmed. In the event of further proceedings, to the extent necessary for review, the parties shall attach to their filings copies of the trial court's June 20, 2014 Pre-Trial Opinion and/or its March 3, 2016 Post-Sentence Opinion.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>3/20/2017</u>